IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| RANDLE LEE SHEARS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:18-cv-00166-O-BP |
| § | |
| ANDREW M. SAUL,[1] § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Randle Lee Shears ("Shears") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Acting Commissioner of Social Security ("Commissioner") of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") payments under Title XVI. ECF Nos. 1 and 14. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

I.   STATEMENT OF THE CASE

Shears filed applications for a period of disability, DIB, and SSI on September 30, 2014, alleging that his disability began on September 18, 2014. *See* SSA Admin. R. (hereinafter, "Tr.") 69, ECF 12-1. The Commissioner initially denied his claim on February 6, 2015 and denied it

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

again on reconsideration on May 19, 2015. Tr. 69. Shears requested a hearing, which was held before Administrative Law Judge ("ALJ") J. Dell Gordon on November 2, 2017 via video, with Shears and his attorney in Wichita Falls, Texas, and the ALJ in Oklahoma City, Oklahoma. Tr. 69. The ALJ issued his decision on December 15, 2017, finding that Shears was not disabled. Tr. 66, 70.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Shears had not engaged in substantial gainful activity since September 18, 2014, the alleged onset date. Tr. 71. At step two, the ALJ determined that Shears's combined physical impairments constituted a severe impairment, comprised of choroidal melanoma of the left eye, cervical degenerative disc disease, nontraumatic rupture of tendon, long head of right biceps, osteoarthritis of the left knee, hypertension, and diffuse osteopenia of the right ankle. Tr. 71. The ALJ further considered, *inter alia*, the four areas of mental functioning also known as the "paragraph B" criteria and found that Shears's mental impairment was nonsevere because it caused no more than mild limitation in any of the functional areas. Tr. 72-74. At step three, the ALJ found that Shears's impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. pt. 404(p). Tr. 74. At step four, the ALJ ruled that Shears had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). Tr. 75. However, he also found that Shears had certain nonexertional limitations, including reduced ability to reach overhead with his upper extremity and limited vision of his left eye. *Id.* Additionally, the ALJ held that Shears could perform past relevant work as a home health aide, maintenance supervisor, and apartment maintenance worker because this work did not require the performance of work-related activities precluded by Shears's RFC. Tr. 76. Because the ALJ determined that Shears retained the RFC to perform past relevant work at step four, he ruled Shears

2

was not disabled and the sequential analysis ended without necessitating consideration of step five. *See* 20 C.F.R. § 404.1520(f); Tr. 76-77.

The Appeals Council denied review on September 21, 2018. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     FACTUAL BACKGROUND

According to Shears's pleadings, testimony at the administrative hearing, and the administrative record, Shears was born on July 29, 1959 and has a twelfth-grade education. Tr. 322, 383. Shears has not completed any type of specialized job training, trade, or vocational school. Tr. 383. His employment history includes work as a home health aide, maintenance supervisor, stocker, and apartment maintenance worker. Tr. 143. Shears asserts that a combination of impairments renders him disabled under the SSA. ECF No. 1.

## III.     STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).

"Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is

4

appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV.   ANALYSIS

Shears raises three issues on appeal. He claims that the ALJ (1) applied an improper legal standard to evaluate his severe impairments, (2) failed to consider functional limitations stemming from the impairments the ALJ deemed to be severe, and (3) posed a hypothetical question to the vocational expert witness ("VE") that was too vague to allow for meaningful consideration of his functional limitations.

**A.   The ALJ Applied the Proper Legal Standard in Evaluating Shears's Severe Impairments.**

Shears alleges that the ALJ applied an improper legal standard to evaluate his severe impairments. ECF No. 14 at 6. He argues that defining a severe impairment as one which "significantly limits an individual's ability to perform basic work activities" and a non-severe impairment as one that has "no more than a minimal effect on an individual's ability to work" is an improper legal standard inconsistent with Fifth Circuit precedent. *Id.* The Commissioner contends that the Fifth Circuit has endorsed the same language used by the ALJ in the present case and that substantial evidence supports the ALJ's step two determination. ECF No. 15 at 2-4. Though the ALJ did not use the exact language set forth by the Fifth Circuit in *Stone*, the undersigned finds, for the reasons that follow, that the ALJ applied the correct severity standard.

5

At step two of the sequential analysis, the ALJ "must consider the medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii), (c). To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)(ii), (c)). To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at step two, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104-05. Instead, the Fifth Circuit established that an impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101.

To prevent the regulatory standard for severity from limiting a claimant's rights, the Fifth Circuit held in *Stone* that it would "assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106. Nevertheless, a case will not be remanded simply because the ALJ did not use the "magic words[,]" but only when there is no indication that the ALJ applied the correct standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 835 (N.D. Tex.

2008) (lower courts have no discretion to conduct harmless-error analysis to determine if remand was proper when the ALJ failed to apply the *Stone* severity standard).

Here, the ALJ did not cite to *Stone* or apply the *Stone* standard in his decision. Instead, he stated the severity standard as follows:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922; Social Security Rulings (SSRs) 85–28 and 16-3p).

Tr. 70. The *Stone* severity standard does not allow for any interference with work ability, not even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.").

In the Fifth Circuit, failing to cite to *Stone* does not mandate automatic reversal and remand. Instead, application of a harmless error analysis is appropriate where the ALJ proceeds past step two and considers the impairments in the subsequent stages of the sequential evaluation process. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam) (applying harmless error analysis where the ALJ failed to cite Stone at step two but proceeded to steps four and five of the sequential evaluation process); *see also Herrera v. Comm'r*, 406 F. App'x 899, 903 (5th Cir. Dec. 30, 2010) (per curiam) (holding that "ALJ's failure to assess the severity of [a claimant's] impairments at step two is not a basis for remand" where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, "retained the residual functional capacity to do other work."). Therefore, to prevail on his objection, Shears must show that the ALJ's *Stone* error in step two was not harmless. *See Garcia v. Astrue*, No. CIV. M-08-264, 2012 WL 13716, at *12 (S.D. Tex. Jan. 3, 2012) ("Assuming . . . that the ALJ erred in failing to specifically address

7

whether Plaintiff's right leg venous thrombosis was a severe impairment, the next question is whether the ALJ committed reversible error."). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).

Shears argues that the ALJ's error was not harmless because had the ALJ applied the correct legal standard, he would have determined at step two that Shears had severe mental impairments. ECF No. 14 at 6-9. Specifically, he argues that he has been prejudiced by the ALJ's use of an improper legal standard because the ALJ "failed to consider and make accommodation for all of the impairments which interfere with [his] ability to work." *Id.* at 7. However, the undersigned finds that the ALJ's error in applying an incorrect legal standard to the severity requirement was harmless because his determination that Shears's mental impairment was nonsevere was supported by substantial evidence in the record—evidence that the ALJ explicitly cited to and evaluated in rendering his severity finding. Tr. 72-74.

On January 27, 2015, Shears underwent a psychological consultative examination with Tamara Avery, Psy.D. Tr. 652. Dr. Avery noted that she found no evidence of underlying unusual, idiosyncratic, or bizarre ideation and found Shears's thought processes to appear goal-directed. Tr. 653. Dr. Avery also found Shears's thought content was appropriate to mood and circumstances and that he did not display any evidence of delusional thinking, paranoia, or irrational obsessions during the evaluation. *Id.* Dr. Avery further noted that Shears did not report any current suicidal or homicidal ideation, plan, or intent. *Id.* During the interview, Shears denied experiencing any perceptual abnormalities, and no evidence of auditory or visual hallucinatory disturbances was found. Tr. 653-54. Although Dr. Avery found Shears may have difficulty sustaining concentration

and working at a reasonable pace, she highlighted that he appeared able to understand, carry out, and remember instructions both complex and one- and two-step. Tr. 655. Further, despite noting that Shears was likely limited in dealing with normal pressures in a competitive work setting, Dr. Avery reported that Shears was likely able to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public. *Id.*

On February 3, 2015, state agency consultant Cate Miller, M.D., evaluated the evidence of record and reported that Shears appeared to be able to understand, carry out, and remember complex and one- and two-step instructions. Tr. 155. Dr. Miller also concluded that although Shears may be somewhat limited by psychological symptoms, their impact would not compromise his ability to function independently, appropriately, and effectively on a sustained basis. *Id.* On May 8, 2015, state agency consultant Mischca Scales, Ph.D., evaluated the evidence of record and agreed with Dr. Miller's assessment that overall there were no more than minimal mental limitations. Tr. 182-83.

The ALJ also analyzed the four functional areas known as the paragraph B criteria, set out in the disability regulations for evaluating mental disorders and in the Listing. Tr. 73. He noted that Shears had only mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. Tr. 73-74. The ALJ further found that Shears had no limitations in his ability to adapt or manage himself. Tr. 74. Although Shears argues that other evidence in the record supports his assertion that his mental impairment is severe, his "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-CV-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *report and recommendation adopted,* No. 4:15-CV-576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016).

Shears's disagreement with the ALJ's severity finding does not carry his burden of establishing that no substantial evidence supports the ALJ's determination.

Shears also takes issue with the criteria used by Dr. Miller and Dr. Scales in reviewing the evidence of record. Pl's Br. 6. He points out that the paragraph B criteria in effect at the time of state agency review differed from the paragraph B criteria in effect at the time of the ALJ's December 15, 2017 decision. ECF No. 14 at 7-9. Under the prior paragraph B criteria, the ALJ examined whether the claimant was limited in his (1) activities of daily living; (2) social functioning; or (3) concentration, persistence, or pace; and (4) whether the claimant experienced episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, § 12.00C (2016); 20 C.F.R. §§ 404.1520a, 416.920a. However, under the new paragraph B criteria, an ALJ assesses the claimant's (1) ability to understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, § 12.00E(1)-(4) (2017); 20 C.F.R §§ 404.1520a, 416.920a (2017).

While Shears's application was filed on September 30, 2014, the ALJ did not issue his decision until December 15, 2017. TR. 66, 69. Accordingly, the ALJ properly applied the new medical criteria for evaluating mental impairments to Shears. However, because Shears was evaluated by state agency consultants in 2015, his evaluators applied the old paragraph B criteria. Both Dr. Miller, whose examination was dated February 3, 2015, and Dr. Scales, whose examination was dated May 8, 2015, found that Shears had a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. Tr. 154, 183. Shears argues that given the change in criteria, the state agency consultants did not properly address his functional abilities. ECF No. 14 at 7. However, the undersigned finds

that there was substantial evidence in the record from which the ALJ could base his findings on the new paragraph B criteria, including the evaluations done by Dr. Miller and Dr. Scales under the old criteria.

A close examination of the new paragraph B criteria against the old suggests that there are significant areas of overlap such that an evaluation of a claimant under the old criteria would assist in evaluating a claimant under the new criteria. In the proposed rules, the SSA stated that certain former paragraph B criteria, such as activities of daily living, were removed because they involved limitations of multiple mental abilities reflected in the new criteria, and therefore, should not be considered in a single separate area. Revised Medical Criteria for Evaluating Mental Disorders, 75 Fed. Reg. 51,341 (proposed Aug. 19, 2010) (to be codified at 20 C.F.R. pts. 404 and 416). Further, the SSA did not indicate that activities of daily living were in any way irrelevant under the new criteria. The SSA also explained that even though the criteria changed, the SSA was not changing "the types of evidence" it considered in evaluating a claimant's limitations. *Id.* at 51,340. Accordingly, the ALJ did not err when he relied on the opinions of Dr. Miller and Dr. Scales under the old criteria to make a determination under the new criteria.

Therefore, the undersigned concludes that the ALJ's determination that Shears's mental impairment was nonsevere is based upon the applicable medical records and treatment notes and is supported by substantial evidence. Because Shears has failed to show that any error by the ALJ's definition of severity resulted in an improper conclusion, any such error was harmless on these facts and does not require reversal.

**B.     The ALJ Properly Determined Shears's RFC.**

Shears also contends that the ALJ erred in his RFC assessment, arguing that the ALJ failed to consider functional limitations stemming from the impairments he deemed severe in step two.

ECF No. 14 at 9-10. In particular, Shears maintains that the ALJ failed to incorporate the impairments of cervical degenerative disc disease, osteoarthritis of the left knee, hypertension, and diffuse osteopenia of the right ankle that the ALJ found severe into his RFC assessment, thereby rendering the assessment deficient.

To the extent that Shears argues it was inconsistent for the ALJ to find at step two that he had functional limitations stemming from severe impairments and then not include any limitations in determining the RFC, the undersigned notes that "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987). Thus, "the consideration of whether a claimant's impairments are severe at step two is a different inquiry than an ALJ's assessment of the claimant's RFC." *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017), *aff'd*, 755 F. App'x 395 (5th Cir. 2018); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that [the claimant] had a 'combination of impairments that is severe' did not foreclose a finding that [the claimant] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding.").

Here, despite having considered the "entire record" and "all the evidence," the ALJ determined that Shears had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), except for the reduced ability to reach overhead with his right upper extremity and limited vision of his left eye. Tr. 75. By explicitly considering all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence, and opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927, the ALJ provided a sufficient explanation showing that he considered the impairments

he deemed severe in making the RFC assessment. Tr. 75-76. Because the ALJ considered the medical impairments from step two when he made his RFC determination and assessed Shears's limitations based on their impact on his ability to do work, there is no inconsistency between the ALJ's step two findings and his RFC determination.

**C.     The ALJ's Hypothetical Question to the VE was Not Defective.**

Finally, Shears alleges that the specific limitations of "reduced reaching right overhead" and "limited vision of the left eye" noted by the ALJ in his hypothetical question to the VE were too vague for the VE to opine as to whether Shears could perform his past relevant work. ECF No. 14 at 10-11. Specifically, Shears argues that the hypothetical question should have incorporated the ALJ's finding that choroidal melanoma of the left eye is a severe impairment. *Id.* at 10. Additionally, Shears points out that Ms. Tammy Donaldson, a vocational expert witness under contract to the Commissioner to provide vocational testimony, provided in her vocational opinion subsequent to the hearing that the ALJ's hypothetical question "was insufficient to obtain meaningful vocational opinion as to the effect of Plaintiff's limitations upon his ability to perform his past relevant work." ECF No. 14 at 11-12. For the reasons set forth below, the undersigned finds no merit to Shears's argument.

> When an ALJ bases a determination of non-disability on the testimony of a vocational expert in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Detwiler v. Astrue*, No. 5:10-CV-00194-BG, 2012 WL 569188, at *4-5 (N.D. Tex. Jan. 19, 2012), *report and recommendation adopted,* No. 5:10-CV-00194-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). Neither is present here.

The ALJ's hypothetical question included the following limitation, among others: "reduced reaching right overhead" and "limited vision of the left eye." Tr. 143. Therefore, the ALJ presented the VE with Shears's RFC, which the ALJ determined based upon the medical opinions in the treatment record. As discussed above, the RFC was based upon substantial evidence, including Shears's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. Accordingly, notwithstanding Donaldson's subsequent vocational opinion, the undersigned finds that the ALJ sufficiently incorporated all disabilities and impairments he recognized in his hypothetical question to the VE. As a result, the ALJ's hypothetical question was not materially vague or misleading. Because there is not a "significant discrepancy . . . between the limitations included in the hypothetical question posited to the VE and the limitations the ALJ found in his decision," the undersigned finds that no reversible error was committed as to this point. *Ellis v. Astrue*, No. 7:09-CV-70-O-BF, 2010 WL 3422872, at *5 (N.D. Tex. July 27, 2010).

Additionally, Shears's attorney failed to raise this argument before the ALJ during the hearing when he was "'afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question [ ] (including additional disabilities . . . recognized but omitted from the question)' such that the hypothetical question was proper. . . ." Tr. 143; *Bordelon v. Astrue*, 281 F. App'x 418, 423, n.7 (citing *Bowling*, 36 F.3d at 436). Instead, he only cross-examined the VE about limitations of reduced reaching with the right arm "not just overhead but in all directions to occasionally,"

14

limitations in standing and walking to two hours a day, and need for the claimant to "take additional rest breaks exceeding the two ordinary rest breaks to recline for an hour or more per day." Tr. 144. For this additional reason, Shears's challenge to the ALJ's hypothetical question to the VE is unfounded, and reversal on this basis is not required.

## V. CONCLUSION

The ALJ followed the correct legal standards in reaching his conclusion, and substantial evidence in the record supports the ALJ's determination that Shears's mental impairment was nonsevere. The ALJ also properly determined Shears's RFC and did not err when posing a hypothetical question to the VE. For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed on December 2, 2019.

                                                                                                  */s/ Hal R. Ray, Jr.*
                                                                                                   Hal R. Ray, Jr.
                                                                                                   UNITED STATES MAGISTRATE JUDGE